**United States District Court**
For the Northern District of California

1

2

3

4

5            IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   DENNIS L. JAMES,                          No. C 10-01795 SI

9            Plaintiff,                       **ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANTS'**
10      v.                                    **MOTION FOR SUMMARY
                                              JUDGMENT**
    MAGUIRE CORRECTIONAL FACILITY,
11

12           Defendant.
                                        /
13
                              **INTRODUCTION**
14
            Dennis Lamar James filed this pro se civil rights action under 42 U.S.C. § 1983, claiming
15
    that he was beaten and subjected to a forceful body cavity search at the Maguire Correctional
16
    Facility on May 8, 2009.  Defendants have moved for summary judgment, arguing they did not
17
    use excessive force or perform a forceful search of James' rectum.  James has opposed the
18
    motion.  For the reasons discussed below, the court will grant the motion for summary judgment
19
    on the Fourteenth Amendment excessive force claim and deny the motion for summary judgment
20
    on the Fourth Amendment unreasonable search claim.
21

22
                              **BACKGROUND**
23
            The following facts are undisputed unless otherwise noted.
24
            The events that give rise to the allegations of the complaint occurred on May 8, 2009 at
25
    the San Mateo County Jail's Maguire Correctional Facility.  Plaintiff Dennis Lamar James was
26
    a post-arraignment, pretrial detainee incarcerated at the facility at the time of the incident.
27
    Defendant Daniel Reynolds was a deputy sheriff with the Office of the Sheriff of San Mateo
28

1 County.  Defendant Vincent Vasquez was a correctional officer with the Office of the Sheriff

2 of San Mateo County.

3    On May 8, 2009, defendants searched James' cell and property.  The search was initiated

4 because jail staff had received tips that James was selling narcotics from his cell.  As part of the

5 search and while they were inside the cell, Vasquez instructed James to remove his articles of

6 clothing and hand them to Vasquez, who inspected each item for contraband.  After James had

7 removed all of his clothing and it had been inspected, Vasquez instructed James (who was facing

8 him) to turn around and face the other direction.  As James turned, Vasquez saw him make a

9 movement with his hand from his buttocks to his mouth.  Based on this movement and the tips

10 about narcotics sales by James, Vasquez suspected James was attempting to hide contraband in

11 his mouth.  Vasquez twice asked James what was in his mouth.  When James refused to respond,

12 Vasquez grabbed his arm and started to move him toward the wall of the cell and deputy

13 Reynolds moved toward the other side of James and attempted to grab his other arm.  James then

14 broke free and lunged for the nearby toilet in his cell.  Reynolds and Vasquez continued to try

15 to subdue James by grabbing at his arms and pushing him to the floor.   During the struggle,

16 James removed the item – a white powdery substance contained in clear plastic – from his mouth

17 and struggled to put it in the toilet and flush it.  Despite defendants' efforts to subdue him, James

18 was able to throw the powdery substance in the toilet and flush it.  After he flushed the item,

19 deputy Reynolds and C/O Vasquez continued to try to subdue James by wresting his arms behind

20 his back and pushing him to the floor.  They were soon assisted by deputy Andrew Armando,

21 who helped hold James while they handcuffed him.  James states that he was "severly (sic)

22 beaten" by the defendants, but does not elaborate on this conclusory statement, or dispute the

23 defendants' account of the particulars of the struggle or his efforts to dispose of the white

24 powdery substance.  See Complaint, p. 3.

25    Michael Del Rosario, a charge nurse in the Maguire Correctional Facility, examined

26 James for injuries shortly after the incident and found a 2-centimeter contusion on his forehead

27 and an abrasion on his right knee.  Del Rosario also performed a neurological check on James

28 and found normal neurological functioning.  Del Rosario ordered "Motrin and ice for his minor

**United States District Court**
For the Northern District of California

1    injuries."  Del Rosario Decl., ¶ 4.

2          The parties disagree sharply as to whether deputy Reynolds performed a forceful rectal

3    search on James that day.  James provides few details – such as whether it happened before or

4    after the struggle described above – but states that deputy Reynolds "stuck fingers in rectum,

5    which caused bleeding and serious physical injury." Complaint, p. 3.  He claims that this was

6    done "to humiliate and disrespect me."  James Decl., ¶ 5.  Defendants present evidence that

7    Reynolds never placed his fingers in James' rectum that day.   Reynolds Decl., ¶ 9; Vasquez

8    Decl., ¶ 10; Armando Decl., ¶ 5.  Defendants also present evidence that, when nurse Del Rosario

9    examined James' rectum shortly after the incident, he found no signs of rectal bleeding.

10

11                               **VENUE AND JURISDICTION**

12          Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because

13    the events or omissions giving rise to the claims occurred at the Maguire Correctional Facility

14    in San Mateo County, which is located within the Northern District.  See 28 U.S.C. §§ 84,

15    1391(b).  This court has federal question jurisdiction over this action brought under 42 U.S.C.

16    § 1983.  See 28 U.S.C. § 1331.

17

18                          **LEGAL STANDARD FOR SUMMARY JUDGMENT**

19          Summary judgment is appropriate where "there is no genuine dispute as to any material

20    fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

21    moving party bears the initial burden of demonstrating the absence of a genuine issue of material

22    fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party, however, has no

23    burden to disprove matters on which the non-moving party will have the burden of proof at trial.

24    The moving party need only demonstrate to the court that there is an absence of evidence to

25    support the non-moving party's case. Id. at 325.  Once the moving party has met its burden, the

26    burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for

27    trial.'" Id. at 324 (quoting former Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving

28    party must "do more than simply show that there is some metaphysical doubt as to the material

facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though the verification was not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on personal knowledge). James' complaint, opposition to defendants' summary judgment motion, and declaration are considered in opposition to the motion for summary judgment because all were made under penalty of perjury.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255.

## DISCUSSION

A.     Motion for Summary Judgment

1.     Excessive Force Claim

The Due Process Clause of the Fourteenth Amendment protects a pre-trial detainee from the use of force that amounts to punishment. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (citing Bell v. Wolfish, 441 U.S. 520, 535-39 (1979)). If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Bell, 441 U.S. at 539. For example, states must be able to take steps to maintain security and order at pretrial facilities, and restraints that are reasonably

4

**United States District Court**
For the Northern District of California

1  related to a facility's interest in maintaining jail security are not, without more, unconstitutional

2  punishment.  See id. at 540.  The prevention of smuggling of drugs and other contraband is a

3  legitimate security interest.  See generally Hudson v. Palmer, 468 U.S. 517, 527 (1984); Bell,

4  441 U.S. at 559-60.

5      For convicted prisoners, to whom the Eighth Amendment applies, the Supreme Court has

6  held that whenever prison officials stand accused of using excessive physical force, "the core

7  judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore

8  discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7

9  (1992).  In determining whether the use of force was for the purpose of maintaining or restoring

10  discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the

11  need for application of force, the relationship between that need and the amount of force used,

12  the threat reasonably perceived by the responsible officials, any efforts made to temper the

13  severity of a forceful response, and the extent of any injury inflicted.  Id. at 7.

14      Several circuits have held that the Hudson analysis also applies to excessive force claims

15  brought by pretrial detainees under the Fourteenth Amendment.  See Forrest v. Prine, 620 F.3d

16  739, 744 (7th Cir. 2010); United States v. Walsh, 194 F.3d 37, 48 (2d Cir. 1999); Riley v.

17  Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997), abrogated on other grounds by Wilkins v. Gaddy,

18  130 S.Ct. 1175 (2010).  Although the Ninth Circuit has not addressed the issue, it has routinely

19  used the Eighth Amendment as a benchmark for evaluating claims brought by pretrial detainees.

20  See, e.g., Redman v. County of San Diego, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc)

21  (pretrial detainee alleging due process violation when attacked by other inmates must show

22  deliberate indifference to personal security as would a prisoner bringing such claim under Eighth

23  Amendment).[1]

24      James has failed to show a triable issue of fact on his claim that defendants used excessive

25  force on him on May 8, 2009.  On the undisputed evidence, no reasonable jury could conclude

26

27  [1]The Ninth Circuit identified the Fourth Amendment as the source for excessive force claims of jail inmates in Lolli v. County of Orange, 351 F.3d 410 (9th Cir. 2003) and Gibson v. County of

28  Washoe, 290 F.3d 1175 (9th Cir. 2002).  However, both of those cases involved force used on inmates within hours of their arrest, and apparently before the inmates had been arraigned.

United States District Court
For the Northern District of California

1  that defendants used force that amounted to punishment or that the force applied against the

2  resisting James was done maliciously or sadistically to cause harm.

3  The evidence is undisputed that, at the time of the incident, defendants believed James

4  was attempting to dispose of narcotics or other contraband, and that the force used by the

5  defendants was in response to James' physical resistance to their efforts to confiscate the

6  contraband and subdue him.  The steps taken by defendants to restrain James and to confiscate

7  the contraband were reasonably related to the jail's significant and legitimate security interests

8  – including preventing the smuggling of contraband – and did not amount to punishment.

9  James' complaint presented only a conclusory description of the incident, and he provided

10  almost no additional evidence in his very short opposition to the motion for summary judgment.

11  James did not dispute that he physically resisted the defendants' attempts to confiscate the

12  contraband; that he physically struggled with the defendants as he attempted to flush the

13  contraband down the toilet; that the injuries he sustained were a result of defendants' attempts

14  to confiscate the contraband from him; or that he failed to answer the defendants' questions

15  about the contraband.  James also did not dispute that he was taken for medical examination and

16  treatment immediately after the incident, where minimal injuries were identified and treated.

17  Applying the Hudson factors to the undisputed evidence, no reasonable jury could

18  conclude that the force the defendants used was applied "maliciously and sadistically to cause

19  harm" as opposed to a good faith effort to maintain or restore discipline at the facility through

20  subduing James and confiscating the contraband.  See Hudson, 503 U.S. at 7.

21  There was a need for the application of some force as James indisputably was resisting

22  the defendants' efforts to obtain the contraband and to restrain him, was trying to trying to break

23  free from them, and was trying to flush the contraband down the toilet.

24  The relationship between the need for force and the amount of force used – grabbing

25  James' arms and pushing him against the wall and to the ground in an attempt to subdue him and

26  obtain the contraband– was reasonable and proportionate.  There is no evidence that defendants

27  used more force than was needed to restrain James and attempt to confiscate the contraband.

28  Once James was subdued and restrained with handcuffs, the defendants did not continue to use

**United States District Court**
For the Northern District of California

1  force, but took him immediately to the infirmary for a medical examination. See Vasquez Decl.,

2  ¶ 11; Del Rosario Decl., ¶ 2.

3  　　　The defendants could have reasonably perceived that there was a threat to their safety

4  during the incident.  Defendants were faced with a physically resisting inmate in possession of

5  contraband who refused to comply with orders.  Defendants were initially unable to subdue

6  James, and needed a third official to restrain and handcuff him.

7  　　　The defendants also made efforts to temper their response by asking James several times

8  what he was concealing in his mouth.  It was not until James refused to answer C/O Vasquez's

9  questions about the contraband that any force was used, with C/O Vasquez grabbing his arm and

10  moving him towards the wall.  The amount of force used by defendants did not escalate until

11  James broke free and lunged for the toilet.

12  　　　As to the extent of the injuries James suffered, nurse Del Rosario's declaration and the

13  medical records indicate that the only injuries found were a small bruise on James' forehead and

14  an abrasion on his right knee.   James provided no evidence that he was "severly (sic) beaten"

15  and no evidence that the minor injuries he sustained stemmed from the defendants' direct actions

16  as opposed to his efforts to resist.  See Complaint, p. 3.

17  　　　On the evidence in the record, no reasonable jury could conclude that grabbing the arms

18  of the resisting inmate and pushing him against the wall and to the floor was done for the

19  malicious and sadistic purpose of causing harm, rather than for the purpose of maintaining or

20  restoring discipline at the facility.  No reasonable jury could conclude that the force used on

21  James amounted to punishment prohibited by the Fourteenth Amendment.  The defendants are

22  entitled to judgment as a matter of law on James' Fourteenth Amendment claim.

23  　　　The defendants also are entitled to qualified immunity against the Fourteenth Amendment

24  claim.  The defense of qualified immunity protects "government officials . . . from liability for

25  civil damages insofar as their conduct does not violate clearly established statutory or

26  constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald,

27  457 U.S. 800, 818 (1982).  In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth

28  a two-pronged test to determine whether qualified immunity exists.  The threshold question is:

**United States District Court**
For the Northern District of California

1  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the

2  officer's conduct violated a constitutional right?"  Id. at 201.  If no constitutional right was

3  violated if the facts were as alleged, the inquiry ends and defendants prevail.  See id.  If,

4  however, "a violation could be made out on a favorable view of the parties' submissions, the

5  next, sequential step is to ask whether the right was clearly established. . . .  'The contours of the

6  right must be sufficiently clear that a reasonable official would understand that what he is doing

7  violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly

8  established is whether it would be clear to a reasonable officer that his conduct was unlawful in

9  the situation he confronted."  Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640

10  (1987)).  Although Saucier required courts to address the questions in the particular sequence

11  set out above, courts now have the discretion to decide which prong to address first, in light of

12  the particular circumstances of each case.  See Pearson v. Callahan,129 S. Ct. 808, 818 (2009).

13       James' claim falters on the first step of the Saucier analysis because there was not a

14  constitutional violation.  Even assuming arguendo that there was a violation of his constitutional

15  rights, James' claim would fail on the second prong.  The qualified immunity inquiry is

16  deferential to the government official: "[t]he scenario may look different when gauged against

17  the '20/20 vision of hindsight,' but [a court] must look at the situation as a reasonable officer in

18  [the defendants'] position could have perceived it."  Marquez v. Gutierrez, 322 F.3d 689, 693

19  (9th Cir. 2003).  The evidence is undisputed that the defendants believed James was in

20  possession of narcotics or other contraband, that James physically resisted the defendants'

21  attempts to confiscate the contraband, and that James struggled with the officers as he moved

22  towards the toilet and flushed the contraband. Under these undisputed facts, it would not have

23  been clear to a reasonable officer that it was unlawful to grab James' arms and push him to the

24  floor in order to subdue him and seize the contraband.  The defendants are entitled to qualified

25  immunity on James' Fourteenth Amendment claim as a matter of law.

26

27

28

8

**United States District Court**
For the Northern District of California

1          2.          Unreasonable Search Claim

2          The Fourth Amendment applies to claims about the invasion of bodily privacy in prisons

3   and jails. Bull v. San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc).  The Fourth

4   Amendment's reasonableness requirement includes some protection against searches that are

5   conducted in an abusive manner. See id. at 981.  The court must do a fact-specific "balancing

6   of the need for the particular search against the invasion of personal rights that the search entails.

7   Courts must consider the scope of the particular intrusion, the manner in which it is conducted,

8   the justification for initiating it, and the place in which it is conducted." Bell, 441 U.S. at 559.

9   The search "must be conducted in a reasonable manner." Id. at 560.

10         As is evident in the "Background" section above, the parties' versions of the body cavity

11  search differ markedly.  If the defendants' version is believed, deputy Reynolds did not conduct

12  any rectal search, and there would not have been a violation of James' limited right to bodily

13  privacy under the Fourth Amendment.  If James' version is believed, Reynolds conducted a

14  forceful search of James' rectum, causing physical injury and bleeding that apparently would

15  amount to a Fourth Amendment violation.[2]  But summary judgment is not the place for

16  credibility determinations.  The court could not grant summary judgment on this claim in

17  defendants' favor without accepting defendants' version and disbelieving plaintiff's version. A

18  trier of fact must hear both versions and decide who to believe.  James has established a

19  "genuine dispute" as to a "material fact" concerning whether deputy Reynolds forcefully

20  searched his rectum and, if so, whether the search was reasonable.  Summary judgment is

21  therefore not appropriate on James' Fourth Amendment unreasonable search claim.  The same

22  disputed facts preclude qualified immunity for defendants on this claim.

23

24  B.       Referral to Mediation Program

25         Having granted in part and denied in part defendants' motion for summary judgment,

26

27         [2]Defendants argue that James has no evidence to support his claim of an improper rectal search.
28  They are incorrect.  James' statement under penalty of perjury that he was subjected to a forceful digital
    rectal search is sufficient evidence to create a triable issue of fact.

1   there is a rather narrow dispute left to litigate, i.e., the Fourth Amendment claim against

2   defendant Reynolds regarding the rectal search.  This case appears a good candidate for the

3   court's mediation program.

4       Good cause appearing therefor, this case is now referred to Magistrate Judge Vadas for

5   mediation proceedings pursuant to the Pro Se Prisoner Mediation Program.  The proceedings

6   will take place within **ninety days** of the date this order is filed.  Magistrate Judge Vadas will

7   coordinate a time and date for a mediation proceeding with all interested parties and/or their

8   representatives and, within **five days** after the conclusion of the mediation proceedings, file with

9   the court a report for the prisoner mediation proceedings.

10

11                                    **CONCLUSION**

12       Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

13   (Docket # 11.)  Defendants are entitled to judgment in their favor on plaintiff's Fourteenth

14   Amendment excessive force claim.  Due to the existence of a triable issue of fact, judgment will

15   <u>not</u> be entered on plaintiff's Fourth Amendment claim against defendant Reynolds for an

16   unreasonable search.  The court will await the conclusion of the case against defendant Reynolds

17   before entering judgment so that a single judgment may be entered addressing all the claims in

18   the action.

19       Plaintiff filed a "motion of change of address and show cause."  (Docket #15.)  The

20   motion is GRANTED in that the clerk has updated the docket with plaintiff's current address.

21   The motion to "show cause" is denied because the court does not understand it.

22       The case is referred to Magistrate Judge Vadas for mediation proceedings pursuant to the

23   Pro Se Prisoner Mediation Program.  The clerk will send to Magistrate Judge Vadas in Eureka,

24   California, a copy of this order.

25       **IT IS SO ORDERED.**

26

27   Dated: July 6, 2011

                                              _____

28                                             SUSAN ILLSTON
                                          United States District Judge