**United States District Court**
**For the Northern District of California**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS LAMAR JAMES, JR., | No. C 10-1795 SI (pr) |
| Plaintiff, | **ORDER DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; REFERRING CASE TO PRO SE PRISONER MEDIATION PROGRAM** |
| v. | |
| MAGUIRE CORRECTIONAL FACILITY; et al., | |
| Defendants. | |

## INTRODUCTION

In this civil rights action under 42 U.S.C. §1983, Dennis Lamar James, Jr., complains that he was subjected to an unreasonable search by defendant Deputy Daniel Reynolds at the San Mateo County Jail's Maguire Correctional Facility.[1] Defendant Reynolds, the only remaining defendant in this action, has filed a motion for summary judgment. (Docket # 33.) James has opposed the motion, and defendant has filed a reply.[2] Defendant relies largely on plaintiff's admissions, which plaintiff moves to withdraw. (Docket # 43.) For the reasons discussed below, plaintiff's motion will be granted and defendant's motion will be denied without prejudice. The court will refer the matter back to the court's *pro se* mediation program.

///

---

[1] Defendants were granted summary judgment with respect to James' excessive force claim. See Docket # 16.

[2] Thereafter, the parties were permitted to file supplemental briefs to comply with the notice requirements under Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc) (App A). See Docket # 41.

## BACKGROUND

The following facts are undisputed, unless otherwise noted[3]:

The events that give rise to the allegations of the complaint occurred on May 8, 2009 at the San Mateo County Jail's Maguire Correctional Facility. Plaintiff Dennis Lamar James was a post-arraignment, pretrial detainee incarcerated at the facility at the time of the incident. Defendant Daniel Reynolds was a deputy sheriff with the Office of the Sheriff of San Mateo County. Defendant Vincent Vasquez was a correctional officer with the Office of the Sheriff of San Mateo County.

On May 8, 2009, defendants searched James' cell and property. The search was initiated because jail staff had received tips that James was selling narcotics from his cell. As part of the search and while they were inside the cell, Vasquez instructed James to remove his articles of clothing and hand them to Vasquez, who inspected each item for contraband. After James had removed all of his clothing and it had been inspected, Vasquez instructed James (who was facing him) to turn around and face the other direction. As James turned, Vasquez saw him make a movement with his hand from his buttocks to his mouth. Based on this movement and the tips about narcotics sales by James, Vasquez suspected James was attempting to hide contraband in his mouth. Vasquez twice asked James what was in his mouth. When James refused to respond, Vasquez grabbed his arm and started to move him toward the wall of the cell and deputy Reynolds moved toward the other side of James and attempted to grab his other arm. James then broke free and lunged for the nearby toilet in his cell. Reynolds and Vasquez continued to try to subdue James by grabbing at his arms and pushing him to the floor. During the struggle, James removed the item – a white powdery substance contained in clear plastic – from his mouth and struggled to put it in the toilet and flush it. Despite defendants' efforts to subdue him, James was able to throw the powdery substance in the toilet and flush it. After he flushed the item, deputy Reynolds and C/O Vasquez continued to try to subdue James by wresting his arms behind his back and pushing him to the floor. They were soon assisted by deputy Andrew

---

[3]The facts are taken from the Court's Order Granting In Part and Denying Part Defendants' Motion for Summary Judgment. See Docket # 16.

Armando, who helped hold James while they handcuffed him. James states that he was "severly (sic) beaten" by the defendants, but does not elaborate on this conclusory statement, or dispute the defendants' account of the particulars of the struggle or his efforts to dispose of the white powdery substance. See Complaint, p. 3.

Michael Del Rosario, a charge nurse in the Maguire Correctional Facility, examined James for injuries shortly after the incident and found a 2-centimeter contusion on his forehead and an abrasion on his right knee. Del Rosario also performed a neurological check on James and found normal neurological functioning. Del Rosario ordered "Motrin and ice for his minor injuries." Del Rosario Decl., ¶ 4; Docket # 11.

The parties disagree sharply as to whether deputy Reynolds performed a forceful rectal search on James that day. James provides few details – such as whether it happened before or after the struggle described above – but states that deputy Reynolds "stuck fingers in rectum, which caused bleeding and serious physical injury." Complaint, p. 3. He claims that this was done "to humiliate and disrespect me." James Decl., ¶ 5; Docket # 11. Defendants present evidence that Reynolds never placed his fingers in James' rectum that day. Reynolds Decl., ¶ 9; Vasquez Decl., ¶ 10; Armando Decl., ¶ 5. Defendants also present evidence that, when nurse Del Rosario examined James' rectum shortly after the incident, he found no signs of rectal bleeding.

**VENUE AND JURISDICTION**

Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because the events or omissions giving rise to Johnson's complaint occurred in Alameda County, located in the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment

3

1 "against a party who fails to make a showing sufficient to establish the existence of an element 2 essential to that party's case, and on which that party will bear the burden of proof at trial . . . 3 since a complete failure of proof concerning an essential element of the nonmoving party's case 4 necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 5 (1986). A fact is material if it might affect the outcome of the suit under governing law, and a 6 dispute about a material fact is genuine "if the evidence is such that a reasonable jury could 7 return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 8 (1986).

9 Generally, as is the situation with defendants' challenge to the Fourth Amendment claim, 10 the moving party bears the initial burden of identifying those portions of the record which 11 demonstrate the absence of a genuine issue of material fact. The burden then shifts to the 12 nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, 13 answers to interrogatories, or admissions on file,' designate 'specific facts showing that there 14 is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

15 Where the moving party bears the burden of proof at trial, he must come forward with 16 evidence which would entitle him to a directed verdict if the evidence went uncontroverted at 17 trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). He must establish the 18 absence of a genuine issue of fact on each issue material to his affirmative defense. Id. at 1537; 19 see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. When the defendant-movant has 20 come forward with this evidence, the burden shifts to the non-movant to set forth specific facts 21 showing the existence of a genuine issue of fact on the defense.

22 The court's function on a summary judgment motion is not to make credibility 23 determinations nor to weigh conflicting evidence with respect to a disputed material fact. See 24 T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The 25 evidence must be viewed in the light most favorable to the nonmoving party, and the inferences 26 to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. Id. 27 at 631.

28

4

**DISCUSSION**

A. <u>Admissions</u>

In his motion for summary judgment, defendant argues that written discovery shows that there is no genuine issue as to any material fact because James made admissions that put to rest any questions regarding the facts of this matter. Mot. at 1; Docket # 33. Defendant asserts that on January 19, 2012, pursuant to Federal Rule of Civil Procedure 36, he served James with Requests for Admissions via US first class mail. <u>Id.</u> at 3. As of March 1, 2012, defendant had not been served with James' responses to his Requests for Admissions. <u>Id.</u> Defendant filed the instant motion for summary judgment on March 2, 2012.

On March 12, 2012, James filed a notice of change of address and opposition to defendant's motion for summary judgment wherein he claims that he did not receive defendant's Requests for Admissions because the address to which it was sent is a P.O. Box which is checked by his mother. Oppo. at 1-2; Docket # 36. James also requests that this Court take into consideration the fact that he was out of custody from February 4 until February 19, 2012, and that he has been in Santa Rita Jail since. <u>Id.</u> James states that he sent a response to defendant's requests for admissions with objections on March 8, 2012, and denies the requested admissions entirely. <u>Id.</u>

In reply, defendant asserts that James' own carelessness is to blame for his failure to respond. Docket # 40 at 1. Defendant points out that James admits that he received the Requests for Admissions and that he did not timely respond. Defendant also points out that James designated the P.O. Box in question as his only point of contact for this action. Lastly, defendant argues that James has not properly availed himself of the relief of withdrawal of his admissions by filing a proper motion, but that in any event, James should not be permitted to withdraw the admissions based on his irresponsible actions. <u>Id.</u> James has since filed a motion to withdraw the admissions. (Docket # 43.)

Although requests for admissions under Rule 36 of the Federal Rules of Civil Procedure are governed by the same relevance standards set in Rule 26(b), such requests are not, strictly speaking, discovery devices, since they presuppose that the propounding party knows or believes

5

the facts sought and merely seeks a concession on that fact from the other party. See Workman v. Chinchinian, 807 F.Supp. 634, 647 (E.D. Wash.1992) (Rule 26 relevance standards apply); Misco, Inc. v. United States Steel Corporation, 784 F.2d 198, 205 (6th Cir. 1986) (not a discovery device) (citing Wright & Miller, Federal Practice and Procedure § 2254). Because admissions are designed to limit factual issues in a case, the requesting party bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification. To facilitate clear and succinct responses, the facts stated in the request must be singularly, specifically, and carefully detailed. Henry v. Champlain Enterprises, Inc., 212 F.R.D. 73, 77 (N.D.N.Y. 2003). Moreover, requests for admissions should not contain "compound, conjunctive, or disjunctive . . . statements." U.S. ex rel. England v. Los Angeles County, 235 F.R.D. 675, 684 (E.D. Cal. 2006). However, "when the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-technical reading of the request." Id. Finally, requests for admissions should not be used to establish "facts which are obviously in dispute," Lakehead Pipe Line Co. v. American Home Assur. Co., 177 F.R.D. 454, 458 (D. Minn. 1997), to "demand that the other party admit the truth of a legal conclusion," even if the conclusion is "attached to operative facts," or to ask the party to admit facts of which he or she has no special knowledge. Disability Rights Council v. Wash. Metro. Area, 234 F.R.D. 1, 3 (D.C. Cir. 2006).

When a party fails to timely respond to requests for admissions, those requests are automatically deemed admitted. See Fed. R. Civ. P. Rule 36(a). "Any matter admitted under this rule is conclusively established unless the Court on motion permits withdrawal or amendment of the admission." Fed. R. Civ. P. Rule 36(a). The Rule gives a district court discretion to grant relief from an admission made under Rule 36(a) if (1) "it would promote the presentation of the merits of the action" and (2) "'the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.'" Fed. R. Civ. P. 36(b); Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007) (internal citations omitted).

6

1       "The first half of the test in Rule 36(b) is satisfied when upholding the admission would
2 practically eliminate any presentation of the merits of the case." Hadley v. United States, 45
3 F.3d 1345, 1348 (9th Cir.1995). For example, in Conlon, the plaintiff failed to respond to
4 requests for admissions and thereby admitted his damages were not caused by the wrongful acts
5 of the defendant. "[T]he deemed admissions eliminated any need for a presentation on the
6 merits" and therefore satisfied the first prong of the standard for granting relief from deemed
7 admissions. Conlon, 474 F.3d at 622.

8       Under the second half of the Rule 36(b) test, "[t]he party relying on the deemed admission
9 has the burden of proving prejudice." Conlon, 474 F.3d at 622. "The prejudice contemplated
10 by Rule 36(b) is 'not simply that the party who obtained the admission will now have to
11 convince the factfinder of its truth. Rather, it relates to the difficulty a party may face in proving
12 its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain
13 evidence' with respect to the questions previously deemed admitted." Hadley, 45 F.3d at 1348,
14 citing Brook Village N. Assocs. v. General Elec. Co., 686 F.2d 66, 70 (1st Cir.1982). The party
15 who obtained the admission has the burden of proving that the withdrawal of the admission
16 would prejudice the party's case.

17       Notwithstanding plaintiff's lack of diligence in responding to defendant's Requests for
18 Admissions, the court finds withdrawal of the admissions is warranted at this time. First of all,
19 defendant relies on the admissions to establish facts which are "obviously in dispute," *i.e.*,
20 whether or not defendant actually placed his finger in James' rectum. See Lakehead Pipe Line
21 Co., 177 F.R.D. at 458. Furthermore, the admissions would eliminate any need for presentation
22 of plaintiff's claim on the merits, which satisfies the first prong of the standard for granting relief
23 from deemed admissions. See Conlon, 474 F.3d at 622. Lastly, the court is not convinced that
24 defendant would be prejudiced by the withdrawal of the admissions. Defendant argues that he
25 has displayed to Plaintiff "key elements of his intended defense strategy" through the Requests
26 for Admissions and the motion for summary judgment. Suppl. Reply at 3-4; Docket # 42.
27 However, defendant's motion relies solely on plaintiff's admissions rather than any new
28 evidence. Mot. at 5. The court is not persuaded that defendant will now face unexpected

difficulties in proving its case. See Hadley, 45 F.3d at 1348. Defendant also argues that plaintiff would proceed in this matter "confident in the fact that he could always claim ignorance and avoid penalty." (Docket # 42, page 3.) The court is properly exercising its discretion in permitting the withdrawal of the admissions for the reasons stated above rather than accepting plaintiff's excuses. Nevertheless, plaintiff is hereby put on notice that the court will not look favorably on any dilatory tactics and will require that he strictly adhere to the Federal Rules of Civil Procedure. Plaintiff is also warned that he must respond in a timely manner to defendant's requests and to promptly notify the court and defendant of any change in address.

For the foregoing reasons, plaintiff's motion to withdraw his admissions is GRANTED pursuant to Fed. R. Civ. P. Rule 36(a). (Docket # 43.) Without the admissions, there still remains a "genuine dispute" as to a "material fact" concerning whether defendant Reynolds forcefully searched James' rectum and, if so, whether the search was reasonable. Celotex, 477 U.S. at 324. Summary judgment is therefore not appropriate on the Fourth Amendment unreasonable search claim based on the arguments presented in defendant Reynold's motion which rely solely on the withdrawn admissions. Defendant will be permitted to file a renewed motion for summary judgment showing "no genuine issue as to any material fact" should settlement proceedings be unsuccessful.

B.  Referral to Mediation Program

The court referred this matter to the court's mediation program in a prior order after granting in part and denying part defendants' motion for summary judgment. (See Docket # 16.) Because plaintiff was repeatedly in and out of custody, the settlement conference was repeatedly reset over the course of several months. To move the action forward, the court withdrew the referral from the mediation program to adjudicate the motion for summary judgment filed by the remaining defendant, against which plaintiff filed opposition. (See Docket # 37.) The court left open the possibility of referring the matter again to the mediation program if the action survives the summary judgment motion. (Id.)

In light of the court's denial of the summary judgment motion, this case is once again

referred to Magistrate Judge Vadas for mediation proceedings pursuant to the Pro Se Prisoner Mediation Program. The proceedings will take place **within ninety days** of the date this order is filed. Magistrate Judge Vadas will coordinate a time and date for a mediation proceeding with all interested parties and/or their representatives and, **within five days** after the conclusion of the mediation proceedings, file with the court a report for the prisoner mediation proceedings.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to withdraw the admissions is GRANTED. (Docket # 43.) Defendant Reynold's motion for summary judgment is DENIED without prejudice. (Docket # 33.)

The case is once again referred to Magistrate Judge Vadas for mediation proceedings pursuant to the Pro Se Prisoner Mediation Program. The clerk will send to Magistrate Judge Vadas in Eureka, California, a copy of this order.

IT IS SO ORDERED.

Dated: September 10, 2012

_____
SUSAN ILLSTON
United States District Judge